# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 07-0810V**
**(Not to be published)**

| | |
|---|---|
| PETER NUTTALL and CHERIE NUTTALL, as the legal representatives of their minor son, N.N., Petitioners, | Filed: June 30, 2017 |
| v. | |
| SECRETARY OF HEALTH AND HUMAN SERVICES Respondent. | Attorneys' Fees and Costs; Local Rates Idaho; Fees for Appeals |

## DECISION AWARDING FINAL ATTORNEYS' FEES AND COSTS

**HASTINGS, *Special Master.***

In this case filed under the National Vaccine Injury Compensation Program (hereinafter "the Program")[1], Petitioners seek, pursuant to 42 U.S.C. § 300aa-15(e)(1), an award for attorneys' fees and other costs incurred in attempting to obtain Program compensation. After careful consideration, I have determined to grant the request in a reduced amount, for the reasons set forth below.

## I

## PROCEDURAL BACKGROUND AND RELEVANT FACTS

On November 19, 2007, Mr. and Mrs. Nuttall filed a Petition on behalf of their minor son, N.N., under the Vaccine Act. (§§ 300aa-1 to 300aa-34.) Petitioners alleged that N.N. developed CDD following his MMR vaccination on November 22, 2004. (Pet. at ¶¶ 2-4.)

The case initially proceeded to a fact hearing before Special Master Christian Moran on June 24, 2008 (ECF No. 17), before later being stayed pending the outcome of the Omnibus

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 et seq. (2012 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2012 ed.). I will also sometimes refer to the statutory provisions defining the program as the "Vaccine Act."

Autism Proceeding ("OAP") (ECF No. 25). Petitioners moved for an award of "interim" attorneys' fees and costs on November 12, 2010. (ECF No. 28.) Special Master Moran awarded interim fees and costs on November 4, 2011 in the amount of $37,445.02. (ECF No. 40.)

Subsequently, an expert hearing was held before then-Chief Special Master Patricia Campbell-Smith on January 25, 2013. (ECF No. 71.) The case was reassigned to me on March 8, 2013. (ECF No. 72.) Petitioners again moved for interim attorneys' fees and costs on March 19, 2013. (ECF No. 76.) I granted a second award of interim fees and costs in the amount of $166,989.84 on January 23, 2014. (ECF No. 97.)

On January 20, 2015, I issued a Decision denying Petitioners' entitlement to compensation in this case.[2] (ECF No. 100.) Petitioners sought review of my Decision. (ECF No. 102.) On July 31, 2015, Judge Firestone issued an opinion affirming my Decision (ECF No. 109), and a judgment dismissing the case was entered the same day (ECF No. 110).

Petitioners filed a Notice of Appeal to the Court of Appeals for the Federal Circuit on September 29, 2015. (ECF No. 112.) The Federal Circuit issued a Notice of Entry of Judgment Without Opinion on May 17, 2016 (ECF No. 113), and a mandate affirming Judge Firestone's decision on July 8, 2016 (ECF No. 115).

On July 6, 2016, Petitioners filed the instant motion for attorneys' fees and costs. (ECF No. 114.) Respondent filed a response on July 19, 2016 (ECF No. 116), and Petitioners filed a reply on July 29, 2016 (ECF No. 117). Petitioners' motion seeks attorneys' fees and costs in the amount of $195,076.73. (ECF No. 114, p. 2.) This includes $26,088.00 for a supplemental expert report by Petitioners' expert, Dr. Shuman, as well as $165,779.10 in attorneys' fees for Petitioners' attorney, Curtis Webb, for work beginning with Petitioners' reply brief on Petitioners' second motion for interim fees and costs, and continuing through post-hearing briefs, Petitioners' motion for review, Petitioners' appeal to the Federal Circuit, and the instant motion. (*Id.*, pp.12-15.)

## II

## LEGAL STANDARD FOR AWARDING ATTORNEYS' FEES AND COSTS

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. § 300aa-15(e)(1). This is true even when a petitioner is unsuccessful on the merits of the case, if the petition was filed in good faith and with a reasonable basis.[3] (*Id.*)

---

[2] A more detailed procedural history is included in that Decision.

[3] Section 15(e) of the Vaccine Act sets out the relevant provisions regarding attorneys' fees and costs:

> In awarding compensation on a petition filed under section 300aa-11 of this title the special master or court shall also award as part of such compensation an amount to cover –
> (A) reasonable attorneys' fees, and
> (B) other costs, incurred in any proceeding on such petition. If the judgment of the United States Court of Federal Claims on such a petition does not award compensation, the special master or court may award an amount of compensation to cover petitioners' reasonable attorneys' fees and costs incurred in any

"The determination of the amount of reasonable attorneys' fees is within the special master's discretion." *Saxton v. HHS*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS*, 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Whether a claim is brought in "good faith" is a *subjective* determination, long understood as requiring an "honest belief" that a claim is appropriate for compensation. *See, e.g., Chronister v. HHS*, No. 89-41V, 1990 WL 293438, at *1 (Fed. Cl. Spec. Mstr. Dec. 4, 1990). The standard for finding good faith has been described as "very low," and findings that a petition lacked good faith are rare. *Heath v. HHS*, No. 08-86V, 2011 WL 4433646, at *2 (Fed Cl. Spec. Mstr. Aug. 25, 2011). In fact, it has been said that petitioners are entitled to a presumption of good faith absent direct evidence of bad faith. *Grice v. HHS*, 36 Fed. Cl. 114, 121 (1996).

The question of whether a claim has a "reasonable basis," on the other hand, is *objective*, and must be affirmatively established by the petitioner. *McKellar v. HHS*, 101 Fed. Cl. 297, 303 (2011). The claim of a "reasonable basis" must be supported by more than "unsupported speculation." *Perreira v. HHS*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). Rather, to have a reasonable basis, a claim must be supported, at a minimum, by medical records or medical opinion. *Chronister*, 1990 WL 293438 at *1.

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the *petitioner* to demonstrate that the attorneys' fees claimed are "reasonable." *Sabella v. HHS*, 86 Fed. Cl. 201, 215 (2009); *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Rupert v. HHS*, 52 Fed. Cl. 684, 686 (2002); *Wilcox v. HHS*, No. 90-991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997). The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees. *Perreira v. HHS*, 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994).

One test of the "reasonableness" of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure. *Riggins v. HHS*, No. 99-382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd by unpublished order* (Fed. Cl. Dec. 10, 2009), *aff'd*, 406 Fed. App'x. 479 (Fed. Cir. 2011); *Sabella v. HHS*, No. 02-1627V, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *aff'd in part and rev'd in part*, 86 Fed. Cl. 201 (2009). In this regard, the Federal Circuit has noted that:

> [i]n the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Saxton*, 3 F.3d at 1521 (emphasis in original) (quoting *Hensley*, 461 U.S. at 433-34). Therefore, in assessing the number of hours reasonably expended by an attorney, the court must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obliged to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see also Riggins*, 2009 WL 3319818, at *4.

---

proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought. §300aa-15(e)(1).

## III

## REASONABLE BASIS AND GOOD FAITH

In my prior Decision awarding interim fees and costs on January 23, 2014, I previously concluded that this claim was brought in good faith and with a reasonable basis. (ECF No. 97.) That Decision, however, addressed only the attorneys' fees and costs incurred up to and including the expert hearing conducted on January 25, 2013. (*Id.*) It is well established that a reasonable basis to proceed can be lost as the facts of a case are developed. *See, e.g., Miller v. HHS*, No. 02-235V, 2016 WL 3746160 (Fed. Cl. Spec. Mstr. June 3, 2016) (finding that it became unreasonable to pursue an autism claim once it became obvious that Petitioner was relying on a plainly defective expert opinion); *Perreira*, 33 F. 3d at 1376 (Fed. Cir. 1994) (finding that the petitioners had a reasonable basis for *initially filing* the petition and for the first part of their case prosecution, but concluded there was *no reasonable basis* for pursuing the case beyond the point when the Perreiras submitted an expert report, at which time the Perreiras' attorneys should have realized that their expert's theory was plainly deficient to demonstrate causation.)

Subsequent to my interim fee Decision, I issued my Decision denying entitlement to a Program award, and this case continued to be litigated upon review at the Court of Federal Claims and on appeal before the Federal Circuit. Petitioners' argument on review and appeal centered in large part on the question of whether I had given adequate weight to the opinion of Dr. Bauza, whose report interpreting N.N.'s MRI was a part of N.N.'s medical record. *See Nuttall v. HHS*, 122 Fed. Cl. 821 (2015). Judge Firestone affirmed my Decision denying entitlement, but gave the matter thorough treatment and closely examined the issue. (*Id.*) Judge Firestone's opinion was affirmed without opinion by the Federal Circuit. *Nuttall v. HHS*, 640 Fed. Appx. 996 (Mem.) (Fed. Cir. 2016).

As noted in my Decision denying entitlement, this was a nuanced case wherein both the testifying experts and the medical records provided conflicting opinions regarding the best diagnosis for N.N.'s condition. Moreover, I specifically noted in my Decision that the case turned on the correct interpretation of the MRIs, and that if I had found the MRI analysis to be favorable to Petitioners, the outcome of the case would have been different. (ECF No. 101, p. 10.) Given the nature of the record, I find that it was reasonable for Petitioner to explore these issues both upon review at the Court of Federal Claims and on appeal before the Federal Circuit. While Respondent is correct that Petitioner's appeal before the Federal Circuit mainly involved factual issues (ECF No. 116, p. 8), which were subject to an arbitrary and capricious standard of review, that alone does not render the appeal *per se* unreasonable. The factual issues in this case, involving interpretation of MRIs, were *very* complex. Nor does the lack of a written opinion accompanying the Federal Circuit's disposition necessarily imply a meritless appeal as Respondent contends. (*Id.*)

Considering the unusually complex nature of this case, I find that the Petitioners *did* have a reasonable basis to continue litigating this case up to the Federal Circuit.

## IV

## AMOUNT OF THE AWARD

### *A. Hourly rates*

In my prior interim fee Decision in this case, I awarded Petitioners' counsel his requested hourly rates of $240 for work performed in 2010, $250 for work performed in 2011, $260 for work performed in 2012, and $270 for work performed in 2013. (ECF No. 97, pp. 4, 6.) At that time, I noted that Mr. Webb was entitled to increasing rates both because of rises in the cost of living and because his work is generally of high quality. (ECF No. 97, p. 6.)

Since that time, Petitioners' counsel has litigated his rates before another special master. In *Garrison*, Special Master Thomas Gowen extensively examined Mr. Webb's local hourly rate in light of recent Idaho district court decisions.[4] *Garrison v. HHS*, No. 14-762V, 2016 WL 3022076 (Fed. Cl. Spec. Mstr. Apr. 29, 2016). He concluded that a reasonable local rate for Mr. Webb is $327 per hour for 2014 and 2015, but went on to award a "forum rate" of $387.50 for those years.[5] *Garrison*, 2016 WL 3022076 at *5-6, *8.

In this case, Mr. Webb does *not* seek the forum rate he was awarded in *Garrison*, but contends that in light of the *Garrison* analysis of district court decisions, he should be awarded *local rates* based on the $327 hourly rate identified in *Garrison* for 2014 and 2015. (ECF No. 114, pp. 1, 12.) Using the annual rate of growth for attorney rates identified in *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), he argues that appropriate rates can be extrapolated as follows:

2013: $309
2014: $321
2015: $333
2016: $345

(ECF No. 114, p. 11.) Thus, Mr. Webb requests compensation at an hourly rate of $309 for 2013, $327 for 2014 and 2015, and $345 for 2016. (*Id.* at 12.)

Respondent objects to Petitioners' requested hourly rates. (ECF No. 116, p. 6.) Specifically, Respondent urges that I should consider *only* rates specific to Twin Falls, Idaho, and that I should award, at most, an inflation-adjusted rate of $285 for recent work. (*Id.*) (At the time of Respondent's filing, the *Garrison* case was still on review before Judge Kaplan. (*Id.*))

Since that time, however, Judge Kaplan has affirmed Special Master Gowen's analysis in *Garrison*. *Garrison v. HHS*, 128 Fed.Cl. 99 (2016). Judge Kaplan upheld the special master's determination that $327 represented a reasonable *local rate*, and rejected the government's arguments concerning the local district court decisions that the special master considered. (*Id*. at 107.) Judge Kaplan also affirmed the special master's ultimate conclusion that Mr. Webb is entitled to a forum rate of $387.50. (*Id*. at 107-8.)

---

[4] Special Master Gowen considered Boise and Twin Falls Idaho to be part of the same community for purposes of evaluating local fee rates. *Garrison*, 2016 WL 3022076 at *4.

[5] Significantly, Special Master Gowen's analysis addressed the rates that Mr. Webb had been awarded in previous vaccine cases, including my own interim fee decision in this case.

Since Mr. Webb is requesting *local rates* in this case, I need not reach the question of "forum rates" as addressed in *Garrison*. I find Special Master Gowen's analysis of applicable local rates to be persuasive. (Moreover, given that Mr. Webb in *Garrison* was awarded a forum rate substantially *exceeding* the local rates requested herein, his lower requested rates in this case seem reasonable for that reason as well.) Therefore, I will allow the requested rates.

### *B. Attorney time*

In addition to providing detailed billing records, Mr. Webb also addressed the reasonableness of his billing in seven broader categories. (ECF No. 114, pp. 13-15.) Respondent likewise framed her response using the same categories. (ECF No. 116, pp. 6-10.) Although I have reviewed all of Mr. Webb's billing records, I will address the requested hours according to the same categories as the parties. I will take each category in turn.

#### *1. Preparation of interim fee petition*

Mr. Webb's prior application for interim fees and costs included 12.2 hours of work performed on March 13 and 14 of 2013 in preparation for the interim fee motion. (ECF No. 76-2, p. 20 of 23; ECF No. 114, p. 13.) The instant application seeks an additional 13.6 hours of time for further work related to the interim fee application performed from March 15, 2013, to January 24, 2014. (ECF No. 114, p. 13.) The bulk of this work was performed in 2013, and billed at the requested rate of $309. (*Id*.) An additional 1.1 hours was billed in 2014 at a rate of $327 per hour. (*Id*.)

Respondent contends that the amount of time requested -- bringing the total award for preparation of the interim fee application to 25.8 hours -- is excessive. (ECF No. 116, p. 6.) Respondent contends that four to seven hours of attorney time is reasonable for preparation of the interim fee application. (*Id*.) In response, Petitioners stress that they maintained the burden of proof on the application, and therefore that the amount of time requested was necessary to substantiate the significant attorney and expert fees involved. (ECF No. 117, pp. 5-7.)

I find that in this case, given the nature of the interim fee application at issue, a total of 20 hours of attorney time spent on the application and the attendant procedural concerns is reasonable. Since I already awarded 12.2 hours in my prior decision, I now award an additional 7.8 hours as follows:

| | |
|---|---|
| **6.7 hours @ $309 per hour in 2013 =** | **$2,070.30** |
| **1.1 hours @ $327 per hour in 2014 =** | **$359.70** |
| **Total =** | **$2,430.00** |

***2. Petitioners' response to the Respondent's trial exhibits, and Petitioners' post-hearing briefs***

Petitioners draw attention to the fact that Respondent introduced four new trial exhibits during the hearing in this case without prior notice. (ECF No. 114, p. 13.) Mr. Webb seeks compensation for 156.1 hours of work performed during 2013 to respond to those exhibits in post-hearing submissions. (*Id*., pp. 13-14.) Respondent notes that Petitioners' expert, Dr. Shuman, also billed significant hours (65 hours) relative to Petitioners' post-hearing submissions, and contends that 50 to 60 hours of time would be reasonable for Mr. Webb's work. (ECF No. 116, p. 7.) In response, Petitioners stressed the importance of Dr. Shuman's response to the trial exhibits, and noted that Respondent provided no basis for the 50 to 60 hours she suggested as reasonable. (ECF No. 117, p. 7.)

Although Petitioners are correct that the post-hearing submissions were very important to Petitioners' case, the number of hours requested seems slightly excessive. In that regard, I note, for example, that a number of the billing entries for work on the post-hearing briefing also include notations that time was spent conferring with Petitioners, which is incongruous with the nature of the post-hearing briefs that were focused on rebutting Respondent's trial exhibits. (*See, e.g.*, ECF No. 114-1, p. 14 of 43, entries for 8/1/2013, 8/2/2013, 8/6/2013.) Upon consideration of the parties' contentions, as well as the underlying billing records, I find that 140 hours of time to Mr. Webb is appropriate for the post-hearing briefing to be awarded as follows:

**140 hours @ $309 per hour in 2013 = $43,260.00**

***3. Assisting the Petitioners in managing N.N.'s care***

Citing the fact that N.N. is a catastrophically injured child with extensive special care needs, Mr. Webb requests compensation for 46.7 hours of attorney time (16.1 hours in 2013 and 30.6 hours in 2014) spent assisting Petitioners with the resulting difficulties. (ECF No. 114, p. 14.) Respondent counters that while Mr. Webb's efforts are admirable, they are not compensable under the Vaccine Act, because they were not incurred in a proceeding on a petition. (ECF No. 116, p. 7.) Petitioners contend that these hours were important to N.N.'s well-being, and would have contributed to an accurate assessment of N.N.'s present and future needs had the case reached the damages phase. (ECF No. 117, p. 8.)

While I join Respondent in noting that Mr. Webb's assistance to the Nuttalls is admirable, I do not find that these fees are properly billed to the Vaccine Program. There is insufficient evidence to support the contention that these charges did or could have furthered the proceedings in this case. Entries in Mr. Webb's billing records show that much of that time was related to urgent care, custody, guardianship, and a "crisis" in N.N.'s care arrangements. (*See* ECF No. 114-1, pp. 13-14, 15-16 of 43.) While the circumstances of N.N.'s care and custody may have *impacted* the amount of compensation in N.N.'s case, there is no evidence that Mr. Webb's activity would have been necessary to resolve the amount of appropriate damages. Moreover, even if these activities could theoretically have become relevant during a damages phase of this case, such a contention is speculative. Mr. Webb did not have a reasonable basis to

incur these fees at the time. Thus, I find that Mr. Webb is not entitled to any of 46.7 hours claimed for these purposes.

### *4. Status conferences and brief exploration of settlement*

Petitioners request 6.5 hours of time at a rate of $327 per hour for work performed in 2014 relating to exploration of a litigative risk settlement of this case. (ECF No. 114, p. 14.) Respondent does not object to the requested number of hours. (ECF No. 116, p. 7.) I find that the requested amount is reasonable, and award these hours in full as follows:

**6.5 hours @ $327 per hour in 2014 = $2,125.50**

### *5. Motion for Review*

Petitioners request 56.8 hours of time at a rate of $327 per hour for work performed in 2015 in order to prosecute Petitioners' Motion for Review. (ECF No. 114, p. 15.) Respondent does not object to the requested number of hours. (ECF No. 116, p. 8.) I find that the requested amount is reasonable and award these hours in full as follows:

**56.8 hours @ $327 per hour in 2015 = $18,573.60**

### *6. Appeal to the Federal Circuit*

For prosecution of their appeal to the Federal Circuit, Petitioners request 140.9 hours of attorney time during 2015 and 85 hours of attorney time in 2016. (ECF No. 114, p. 15.) Among the hours requested for 2016, 23 hours represent Mr. Webb's travel time to and from Washington, D.C., for oral argument on May 4, 2016, and are appropriately billed at $172.50 per hour, half of Mr. Webb's requested rate for 2016. (*Id*.) Petitioners argued that the high number of hours were justified, because N.N.'s condition is severe and Petitioners faced a high burden on appeal. (ECF No. 114, p. 18.)

Respondent contends that Petitioners' appeal to the Federal Circuit was meritless, and that none of Mr. Webb's time for the appeal should be allowed. (ECF No. 116, pp. 8-9.) Respondent further contends that the requested hours are excessive, and that 100 hours would constitute a reasonable number of hours for an appeal to the Federal Circuit. (ECF No. 116, p. 9, fn. 4.) Respondent characterized the amount of time spent on Petitioners' appeal as "grossly excessive," and noted that much of the briefing was redundant of prior briefing in this case. (*Id*.)

In response, Petitioners defended the reasonableness of their appeal to the Federal Circuit, and further argued that extensive work was required to put my Decision in context using a "wealth of detail." (ECF No. 117, p. 11.) Petitioners argued that Respondent is not well-practiced in prosecuting appeals, and has provided no basis for her contention that an appeal should take only 100 hours. (*Id*.)

For the reasons described in Section III above, I determine that it was reasonable for Petitioners to pursue an appeal to the Federal Circuit. However, I am not completely persuaded

by Petitioners' arguments regarding the *number of hours* spent on the appeal. Excluding his travel time, Mr. Webb's time spent prosecuting the appeal to the Federal Circuit was *three and a half times* the amount of time he spent on Petitioners' Motion for Review before the Court of Federal Claims. Moreover, the amount of time spent on the appeal to the Federal Circuit was more than the amount of attorney time spent on the post-hearing briefing and motion for review *combined*. It may well be true that N.N.'s condition and the difficult standard of review heightened the consequences for Petitioners, and I appreciate Mr. Webb's desire to do good work, but these factors do not fundamentally change the nature or complexity of the case. Moreover, Respondent is correct to observe that many of the arguments raised on appeal had already been addressed during prior stages of this litigation. Therefore, Petitioners' counsel should have been well-acquainted with the issues being briefed. Thus, I find that 125 hours of attorney time is reasonable for prosecution of the appeal to the Federal Circuit (in addition to the travel time), and I award those hours as follows:

**75 hours @ $327 per hour in 2015 = $24,525.00**

**50 hours @ $345 per hour in 2016 = $17,250.00**

**23 hours @ $172.50 per hour (2016 travel) = $3,967.50**

**Total= $45,742.50**

***7. Preparation of this motion for attorneys' fees and costs***

Finally, Petitioners seek 18 hours of attorney time for work performed in 2016 for the preparation of the instant fee application. (ECF No. 114, p. 15.) Respondent contends that four to seven hours of time would have been reasonable for that task. (ECF No. 116, p. 9.)

The issue of the attorneys' fees and costs in this case is much more complicated and hotly contested than in the vast majority of Program fees applications. Under these circumstances, I find no cause to reduce the number of hours sought for this application. Thus, I award those hours as follows:

**18 hours @ $345 per hour in 2016 = $6,210.00**

***C. Costs***

Petitioners additionally seek costs, including $26,088.00 for Dr. Shuman's services (65.22 hours at a rate of $400 per hour) in preparing his supplemental report following the hearing in this case. (ECF No. 114, pp. 18-20.) Noting that Petitioners' focused on Dr. Bauza's report on review rather than emphasizing Dr. Shuman's opinion, Respondent contends that the

amount charged by Dr. Shuman is excessive, particularly since he was already compensated for prior work in the case.[6] (ECF No. 116, pp. 9-10.)

I am not persuaded by Respondent's argument. Dr. Shuman's supplemental report was necessitated by Respondent's introduction of new exhibits at trial. Dr. Shuman's previous compensation for work in this case is of no relevance, where additional unforeseen work was required through no fault of Petitioners. Nor does Petitioners' decision to focus on a different argument in subsequent stages of litigation suggest that Petitioners were not justified in seeking to match Respondent's expert opinion with well-prepared expert analysis of their own. As Petitioners argued in response, Dr. Shuman's supplemental report directly addressed points regarding the correct interpretation of N.N.'s MRI studies, which was central to my ultimate resolution of this case. (ECF No. 117, p. 13.)

Thus, I see no cause to reduce the requested costs. I award Petitioners their costs as follows:

**Dr. Shuman's Fees = $26,088.00**

**Litigation Costs = $3,313.86**

**Total Costs = $29,401.86**

### *D. Summary of amounts awarded*

In conclusion, I award Petitioner a total of $139,794.23 in attorneys' fees and costs, reduced from Petitioners' requested amount of $195,076.73. This amount was calculated as follows:

**<u>Attorneys' Fees:</u>**

| **Year:** | **Hourly Rate:** | **Hours Requested:** | **Hours Awarded:** | **Amount Awarded:** |
|---|---|---|---|---|
| 2013 | $309 | 184.7 | 146.7 | $45,330.30 |
| 2014/2015 | $327 | 235.9 | 139.4 | $45,583.80 |
| 2016 | $345 | 103 | 68 | $23,460.00 |
| 2016 Travel | $172.50 | 23 | 23 | $3,967.50 |
| **Total:** | | | | $118,341.60 |

**<u>Costs:</u>**

(No reduction)

| | |
|---|---|
| **Dr. Shuman** | $26,088.00 |
| **Other Costs** | $3,313.86 |
| **Total Costs:** | $29,401.86 |

[66] Respondent also disputes the appropriateness of Petitioners' other requested costs insofar as they stem primarily from the appeal to the Federal Circuit, which Respondent contends was unreasonable; however, Respondent raises no other objection to these costs. (ECF No. 116, p. 9.)

**<u>Total Attorneys' Fees and Costs:</u>**

**$147,743.46**

## V

## CONCLUSION

For the foregoing reasons, I award the following:

**A lump sum of $147,743.46 in the form of a check payable jointly to Petitioners and Petitioners' counsel, Curtis R. Webb, Esq., on account of services performed and costs incurred by counsel's law firm.**

The clerk of the court shall enter judgment in accordance herewith.[7]

/s/ George L. Hastings, Jr.
George L. Hastings, Jr.
Special Master

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.